**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Mary Ann Whipple
United States Bankruptcy Judge

**Dated: October 15 2007**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 07-31689 |
| | ) | |
| Julia A. Hess, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |
| | ) | JUDGE MARY ANN WHIPPLE |

### MEMORANDUM OF DECISION AND ORDER REGARDING MOTION TO DISMISS

This case is before the court on the United States Trustee's ("the UST") motion to dismiss Debtor's Chapter 7 case for abuse under 11 U.S.C. § 707(b)(3) [Doc. # 33] and Debtor's response [Doc. # 40]. A hearing was held that Debtor, her counsel and counsel for the UST attended in person and at which the parties had the opportunity to present testimony and other evidence in support of their respective positions.

The court has jurisdiction over this case under 28 U.S.C. §1334 and the general order of reference entered in this district. Proceedings to determine a motion to dismiss a case under § 707(b) are core proceedings that the court may hear and decide. 28 U.S.C. § 157(b)(1) and (b)(2)(A). Having considered the briefs and arguments of counsel and having reviewed the record in this case, for the reasons that follow, the court will grant the UST's motion and dismiss Debtor's Chapter 7 case unless she timely converts to a case under Chapter 13.

### BACKGROUND

Debtor is separated from her husband and has no dependent children. She is employed as a computer support technician at Marion General Hospital, where she has worked for the past seventeen years. On April

28, 2007, Debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code. Her bankruptcy schedules show total secured debt in the amount of $298,848, including $235,000 secured by a home valued at $180,000 that was formerly her personal residence and $63,000 secured by a motor home valued at $45,000, unsecured nonpriority debt, consisting primarily of credit card debt, in the amount of $22,515, and no unsecured nonpriority debt. Debtor's Statement of Intention indicates that she intends to surrender both the real estate and the motor home that are the collateral for the secured indebtedness. At the time of filing, the motor home had been repossessed and Debtor was no longer living in her former residence.

Debtor's Statement of Current Monthly Income and Means-Test Calculation shows that her income is above the applicable median income in Ohio. Debtor's Schedule I shows net monthly income after payroll deductions of $2,489. [UST Ex. 1]. Her payroll deductions include a $174 repayment of a 403(b) plan loan.

Debtor's Schedule J shows total monthly expenses in the amount of $2,586, which include a rental expense of $600, a $100 repayment of a loan from Debtor's parents, and $300 for "support of additional dependents" not living in her home. Debtor testified that her rental expense was estimated on Schedule J as she had temporary living arrangements at the time of filing and that her actual rental expense is $675. She further testified that her 403(b) loan repayments are voluntary, the loan from her parents is unsecured, and the $300 "support" payment is for her 24-year old son who is attending optometry school.

The UST filed a timely motion to dismiss for abuse under § 707(b)(3), arguing that the totality of the circumstances are such that Debtor has the ability to repay least a portion of her unsecured debt.

## LAW AND ANALYSIS

This case must be decided under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23, ("BAPCPA" or "the Act") as it was filed on April 28, 2007, after the effective date of the Act. Where debts are primarily consumer debts, the court may, after notice and a hearing, dismiss a Chapter 7 petition "if it finds that the granting of relief would be an abuse of the provisions of [Chapter 7]." 11 U.S.C. § 707(b)(1). Before BAPCPA, courts considered whether to dismiss a case for "substantial abuse" under § 707(b) based on the "totality of the circumstances." *See, e.g., In re Krohn*, 886 F.2d 123, 126 (6th Cir. 1989); *In re Price*, 353 F.3d 1135, 1139 (9th Cir. 2004). The Sixth Circuit explained that "substantial abuse" could be predicated upon either a lack of honesty or want of need, to be determined by the totality of the circumstances. *Krohn*, 886 F.2d at 126. Congress incorporated this judicially created construct in § 707(b)(3) by requiring a court to consider "(A) whether the debtor filed the petition in bad faith; or (B) the totality of the circumstances . . . of the debtor's financial situation

demonstrates abuse." 11 U.S.C. § 707(b)(3)(A) and (B). Although pre-BAPCPA case law applying these concepts is still helpful in determining abuse under § 707(b)(3), under BAPCPA, Congress has clearly lowered the standard for dismissal in changing the test from "substantial abuse" to "abuse." *In re Mestemaker*, 359 B.R. 849, 856 (Bankr. N.D. Ohio 2007).

The UST contends that the totality of the circumstances show that Debtor has the ability to repay a significant portion of her unsecured debt. The totality of the circumstances test allows the court to consider both prepetition and postpetition circumstances. *See U.S. Trustee v. Cortez (In re Cortez)*, 457 F.3d 448, 455 (5th Cir. 2006) ("Section 707(b) does not condition dismissal on the *filing* of bankruptcy being [an abuse] but rather on the *granting of relief,* which suggests that in determining whether to dismiss under § 707(b), a court may act on the basis of any development occurring *before* the discharge is granted."); *In re Mestemaker,* 359 B.R. 849, 855-56 (Bankr. N.D. Ohio 2007); *In re Hartwick*, 359 B.R. 16, 21 (Bankr. D.N.H. 2007). Factors relevant to determining whether a debtor is "needy" include the ability to repay debts out of future earnings, which may alone be sufficient to warrant dismissal under Sixth Circuit precedent. *Krohn*, 886 F.2d at 126. Other factors include "whether the debtor enjoys a stable source of future income, whether [s]he is eligible for adjustment of [her] debts through Chapter 13 of the Bankruptcy Code, whether there are state remedies with the potential to ease [her] financial predicament, the degree of relief obtainable through private negotiations, and whether [her]expenses can be reduced significantly without depriving [her]of adequate food, clothing, shelter and other necessities." *Id.* at 126-27. "Courts generally evaluate as a component of a debtor's ability to pay whether there would be sufficient income in excess of reasonably necessary expenses to fund a Chapter 13 plan." *Mestemaker*, 359 F.3d at 856 (citing *In re Behlke*, 358 F.3d 429, 435 (6th Cir. 2004)).

In this case, Debtor has a stable source of above median income, having been employed at the same job for 17 years. And Debtor's unsecured debts are less than the limits for eligibility for relief under Chapter 13. *See* 11 U.S.C § 109(e). The UST contends that Debtor is able to fund a Chapter 13 plan and pay her unsecured creditors in full, arguing that she improperly deducts a 403(b) loan repayment of $174 from her monthly income and improperly includes on Schedule J the $300 monthly expense paid on behalf of her adult son and the $100 loan expense paid to her parents. The UST contends that these amounts should all be used to pay Debtor's unsecured creditors.

While Debtor does not dispute that the $100 parental loan repayment and the $174 repayment of the 403(b) loan are not proper deductions, she argues that granting a discharge in this case would not be an abuse. She has surrendered her home and a motor home, both of which are likely to result in deficiencies

after sale based upon their scheduled values. Debtor's home, valued at $180,000, is encumbered with mortgages securing $235,000 in debt. Assuming it is sold for two-thirds of its value, *see* Ohio Rev. Code § 2329.20 (providing that land on execution shall not be sold for less than two-thirds of the appraised value), she faces a deficiency judgment of $115,000. Likewise, Debtor's motor home, valued at $44,000, is encumbered by a lien securing debt in the amount of $63,000, the sale of which could result in a deficiency judgment of $18,000 based on scheduled information. Even with this potential additional unsecured debt, Debtor is still within the unsecured debt limits for Chapter 13 eligibility. 11 U.S.C. § 109(e). However, in light of this additional unsecured debt, Debtor disputes the UST's contention that she can fund a meaningful Chapter 13 plan.

The court nevertheless finds that Debtor does have the ability to repay a material portion of her unsecured debt. She enjoys stable employment and there is no indication that she is in danger of losing her job or that she anticipates a material decrease in income within the next five years. In addition to the $274 deducted from Debtor's income for repayment of both her 403(b) loan and her parent's loan, deductions she concedes are not permitted in this context, she is also paying $300 per month for expenses for her adult son who is away at college. He is not considered a dependent, and she has no dependents. While a parent's desire to assist a child who is pursuing a college degree is laudable, a debtor is not free to do so at the expense of her unsecured creditors. *See U.S. Trustee v. Harrelson*, 323 B.R. 176, 179 (Bankr. W.D. Va. 2005) (finding debtors' budget that included their adult children's college expenses to be unreasonable as they were under no duty to pay for such expenses); *In re Staub,* 256 B.R. 567, 571 (Bankr. M.D. Pa. 2000) (agreeing that "educational expenses for adult children are discretionary, and are not expenses that should be foisted upon a debtor's pre-petition creditors"); *In re Studdard*, 159 B.R. 852, 856 (Bankr. E.D. Ark. 1993) (holding that debtors who have the ability to repay their debts could not continue to fund their children's college tuition and living expenses to the detriment of their creditors). This principle has not changed under BAPCPA and is particularly true where the child is pursuing a professional degree as is Debtor's son.

With these adjustments to Debtor's monthly expenses, which will not deprive her of adequate food, clothing, shelter or other necessities, and considering her additional $75 rental expense, her net of income over adjusted expenses is approximately $400 per month. *Cf.* Doc. #1, Form 22A, Line 45a (projected average monthly Chapter 13 plan payment identified as $375). Applying net income of $400 per month to fund a Chapter 13 plan would yield $24,000 over sixty months, a period that coincides with the applicable commitment period of a Chapter 13 plan for above median income debtors. 11 U.S.C. § 1325(b)(4).

4

Assuming Debtor's unsecured debt includes the anticipated deficiencies as well as the $22,515 in unsecured debt set forth in her Schedule F, her unsecured debt totals $155,515. As Debtor's schedules show no unsecured priority debt, unsecured creditors may potentially receive a dividend greater than 14% under a Chapter 13 plan, or more if claims are not filed by all creditors as frequently occurs. *See In re Behlke,* 338 F.3d 429, 437 (6th Cir. 2004) (finding *substantial* abuse where debtors had the ability to pay at least a 14% dividend to their unsecured creditors). If Debtor's undersecured creditors do not timely file deficiency claims, there is a high likelihood that Debtor would be able to retire a more substantial percentage, if not all, of her Schedule F debt within the applicable commitment period. That, of course, cannot now be known for sure; if Debtor chooses to convert to Chapter 13, the confirmation hearing would best be delayed until after the claims bar date has passed. But whether such claims are or are not filed, the equities favor making such funds available to repay Debtor's creditors.

In evaluating the totality of Debtor's financial circumstances, the court is cognizant that Debtor is living modestly. The court has also taken into consideration that Debtor has made honest, reasonable and meaningful attempts to decrease her expenses by surrendering both her substantially over-leveraged home and motor home so as to be able to live within her means going forward. Having made these hard and no doubt emotionally draining choices, it would not be surprising if Debtor felt she was being penalized for having done so and freeing up income that the UST now argues and that this court agrees should be devoted to repayment of unsecured creditors. Two points are in order. First, the argument that any income made available to debtors as the result of surrendering encumbered assets should not be considered as part of the totality of the circumstances under § 707(b)(3)(B) has been expressly rejected. *In re Haar*, 373 B.R. 493 (Bankr. N.D. Ohio 2007). Second, Debtor's failure to rein in expenses she could not afford to maintain, such as monthly mortgage payments totaling $1,840 on a substantially over-leveraged house and $550 monthly payments for a luxury like a motor home, Doc. #1, Schedule D and Form 22A, Line 42, would have been material factors likewise mitigating strongly against affording her relief under Chapter 7. *In re Mooney*, 313 B.R. 709 (Bankr. N.D. Ohio 2004)(pre-BAPCPA case); *In re Zayas*, Case No. 06-13070, 2007 WL 987240, 2007 Bankr. LEXIS 1104 (Bankr. N.D. Ohio April 2, 2007)(BAPCPA case); *In re Hoelzel*, Case No. 07-40598, p. 19-22 (Bankr. N.D. Ohio September 27, 2007)(BAPCPA case); *see In re Haar*, 360 B.R. 759, 768 (Bankr. N.D. Ohio 2007)(a debtor who seeks to reaffirm on a high amount of secured debt, especially luxury items, may be subject to an action to dismiss under § 707(b)(3)(dicta)).

In sum, the court finds that the following factors demonstrate that granting Debtor relief in this case under Chapter 7 of the Bankruptcy Code would be an abuse given the totality of Debtor's financial

circumstances: long term stable employment, above median income status, and the ability to reduce further discretionary expenses now going to insiders and to her own retirement accounts without impacting basic requirements for food, shelter, clothing, transportation, and other necessities, thereby making funds available that could be used to provide meaningful repayment to unsecured and undersecured creditors.

**THEREFORE**, for all of the foregoing reasons, good cause appearing,

**IT IS ORDERED** that the United States Trustee's motion to dismiss under 11 U.S.C. § 707(b) [Doc. # 15] be, and hereby is, **GRANTED**. Debtor is allowed thirty (30) days from the date of this order to file a motion to convert to a Chapter 13 case or the case will be dismissed by separate order of the court.